ORIGINAL
FILED

2012 NOV 28   P 3: 02

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    Post Montgomery Center
3   One Montgomery Street, Suite 1800
    San Francisco, CA 94104
4   Telephone: 415/288-4545
    415/288-4534 (fax)
5   shawnw@rgrdlaw.com
         – and –
6   DARREN J. ROBBINS (168593)
    DAVID C. WALTON (167268)
7   655 West Broadway, Suite 1900
    San Diego, CA 92101
8   Telephone: 619/231-1058
    619/231-7423 (fax)
9   darrenr@rgrdlaw.com
    davew@rgrdlaw.com
10

    Attorneys for Plaintiff
11

    [Additional counsel appear on signature page.]
12
                    UNITED STATES DISTRICT COURT                LHK
13
                    NORTHERN DISTRICT OF CALIFORNIA
14

15   CITY OF DEARBORN HEIGHTS ACT 345    )   No. 12    6039
     POLICE & FIRE RETIREMENT SYSTEM,    )
16   Individually and on Behalf of All Others )  CLASS ACTION
     Similarly Situated,                 )
                                         )   COMPLAINT FOR VIOLATIONS OF
17                      Plaintiff,        )   FEDERAL SECURITIES LAWS
                                         )
18          vs.                          )
                                         )
19   ALIGN TECHNOLOGY, INC., THOMAS M. )
     PRESCOTT and KENNETH B. AROLA,      )
20                                       )
                        Defendants.      )
21   _____)   DEMAND FOR JURY TRIAL

22

23

24

25

26

27

28

1   since this acquisition, Align manufactures the iTero and iOC digital intra-oral scanners and provides

2   CAD/CAM restorative models for use by dental professionals and/or labs and services for

3   orthodontic digital procedures. In North America, Scanners and CAD/CAM Services are sold

4   through direct sales force and distribution partners. In Europe and other regions outside of North

5   America, Align uses a distributor model for the sale of its Scanners and CAD/CAM Services.

6        6.     During the Class Period, defendants issued materially false and misleading statements

7   regarding the Company's current financial condition and quarterly and year-end revenue and

8   earnings outlook for fiscal 2012. As a result of these misrepresentations and omissions, Align's

9   stock traded at artificially inflated prices during the Class Period, reaching a high of $39.17 per share

10   on September 13, 2012.

11        7.     Nevertheless, during the Class Period, Company insiders sold 1,546,445 shares of

12   Align stock at prices as high as $35.83 per share for illegal insider trading proceeds of more than $52

13   million.

14        8.     Defendants' statements during the Class Period alleged herein concerning Align's

15   current financial condition and financial results for fiscal 2012 were each false and misleading,

16   because defendants knew or deliberately disregarded and failed to disclose the following facts:

17          (a)     the Company's reported income and earnings were materially overstated, as

18   the Company failed to timely write down goodwill associated with the April 2011 Cadent

19   acquisition;

20          (b)     negotiations with the Straumann Group ("Straumann"), the Company's

21   exclusive distributor in Europe, concerning their distribution relationship had failed or been failing

22   and therefore the goodwill associated with the acquisition of Cadent had already been materially

23   impaired; and

24          (c)     the Company's sales and current sales trends could not support the

25   Company's third quarter and fiscal 2012 financial forecasts.

26        9.     Then on October 17, 2012, the Company disclosed that as a result of the termination

27   of the Straumann distribution agreement, it would review its goodwill and possibly take a substantial

28   impairment charge, which could erase a significant amount of the goodwill value of Cadent.

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS         - 2 -

1

**INTRODUCTION**

2      1.     Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's
3  undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon
4  personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all
5  other matters based on the investigation conducted by and through plaintiff's attorneys, which
6  included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings
7  by Align Technology, Inc. ("Align" or the "Company"), as well as media reports about the Company
8  and conference call transcripts. Plaintiff believes that substantial additional evidentiary support will
9  exist for the allegations set forth herein after a reasonable opportunity for discovery.

10

**NATURE AND SUMMARY OF THE ACTION**

11      2.     Plaintiff brings this securities class action individually and on behalf of purchasers of
12  Align common stock between April 23, 2012 and October 17, 2012, inclusive (the "Class Period"),
13  under the Securities Exchange Act of 1934 (the "Exchange Act"), against Align and its Chief
14  Executive Officer ("CEO"), Thomas M. Prescott ("Prescott"), and Chief Financial Officer ("CFO"),
15  Kenneth B. Arola ("Arola").  Plaintiff alleges that defendants violated the securities laws by
16  disseminating materially false and misleading statements and concealing material adverse facts
17  regarding Align's current financial condition and growth prospects.

18      3.     Align designs, manufactures and markets Invisalign, a proprietary method for treating
19  malocclusion, or the misalignment of teeth, using a series of clear, removable appliances that gently
20  and incrementally move teeth to a desired final position.

21      4.     The Company performs in two operating segments: (1) Clear Aligner, known as the
22  Invisalign system; and (2) Scanners and CAD/CAM Services, known as iTero and iOC intra-oral
23  scanners and OrthoCAD services. According to the Company's most recent Form 10-K, for the year
24  ended December 31, 2011, the Company distributes the vast majority of its products directly to its
25  customers: orthodontists and general practitioner dentists, or GPs, as well as to restorative dentists,
26  including prosthodontists, periodontists, and oral surgeons.

27      5.     On April 29, 2011, Align acquired Cadent Holdings, Inc. ("Cadent"), a leading
28  provider of 3D digital scanning solutions for orthodontics and dentistry. According to the Company,

1       10.    On the same day, after market hours, the Company issued a press release pre-

2  announcing its third quarter fiscal 2012 financial results.  The reported third quarter 2012 financial

3  results missed Wall Street analysts' revenue and earnings expectations.  As opposed to reporting

4  forecasted revenue results of up to $140.6 million, the Company reported revenue of $136.5 million.

5  In addition, the Company reported that Cadent scanner and CAD/CAM sales and services revenues

6  had declined nearly 16%, year-over-year.  Finally, the Company issued a weak revenue and earnings

7  outlook for the fourth quarter of 2012, well short of prior expectations.

8       11.    On these October 17, 2012 disclosures, Align's stock price plummeted more than

9  20%, from a close of $35.41 per share on October 17, 2012 to a close of $28.18 per share on October

10  18, 2012, on massive trading volume of 20 million shares.

11                   **JURISDICTION AND VENUE**

12       12.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the

13  Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC

14  (17 C.F.R. §240.10b-5).

15       13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

16  §1331 and §27 of the Exchange Act.

17       14.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C.

18  §1391(b).  Many of the acts charged herein, including the preparation and dissemination of

19  materially false and misleading information, occurred in substantial part in this District.

20       15.    In connection with the acts alleged in this complaint, defendants, directly or

21  indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,

22  the mails, interstate telephone communications and the facilities of the national securities markets.

23                      **THE PARTIES**

24       16.    Plaintiff City of Dearborn Heights Act 345 Police & Fire Retirement System, as set

25  forth in the accompanying certification attached hereto and incorporated by reference herein,

26  purchased the common stock of Align at artificially inflated prices during the Class Period and has

27  been damaged by the conduct alleged herein.

28

1   17.     Defendant Align is incorporated in Delaware and maintains its headquarters at 2560

2   Orchard Parkway, San Jose, California 95131. The Company designs, manufactures and markets the

3   Invisalign system for treating malocclusion, or the misalignment of teeth.

4   18.     Defendant Thomas M. Prescott ("Prescott") is, and was at all relevant times, President

5   and CEO of Align.

6   19.     Defendant Kenneth B. Arola ("Arola") is, and was at all relevant times, Align's CFO

7   and Vice President of Finance.

8   20.     The defendants named in ¶¶18-19 are sometimes referred to herein as the "Individual

9   Defendants."

10                              **CONTROL PERSONS**

11  21.     The Individual Defendants, because of their positions with the Company, possessed

12  the power and authority to control the contents of Align's quarterly reports, press releases and

13  presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*,

14  the market. Each defendant was provided with copies of the Company's reports and press releases

15  alleged herein to be misleading prior to or shortly after their issuance, and had the ability and

16  opportunity to prevent their issuance, or cause them to be corrected. Because of their positions and

17  access to material non-public information available to them but not to the public, each of these

18  defendants knew that the adverse facts specified herein had not been disclosed to and were being

19  concealed from the public, and that the positive representations that were being made were then

20  materially false and misleading. The Individual Defendants are liable for the false statements

21  pleaded herein, as those statements were each "group-published" information, the result of the

22  collective actions of the Individual Defendants.

23  22.     As alleged herein, each of the defendants acted with scienter in that each defendant

24  knew or recklessly disregarded that the public documents and statements issued or disseminated in

25  the name of the Company were materially false and misleading or omitted to state facts necessary in

26  order to make the statements made, in light of the circumstances under which they were made, not

27  misleading.   Each defendant knew that such statements or documents would be issued or

28  disseminated to the investing public and knowingly and substantially participated or acquiesced in

1  the making, issuance or dissemination of such statements or documents as a primary violation of the

2  federal securities laws. By virtue of their receipt or reckless disregard of information reflecting the

3  true facts regarding Align, their control over and/or receipt and/or modification of Align's materially

4  misleading statements, and/or their other associations with the Company, each defendant was privy

5  to confidential information concerning Align and knowingly or recklessly participated in the

6  fraudulent scheme and conduct alleged herein.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUES DURING THE CLASS PERIOD

23.     On April 23, 2012, the Company announced its first quarter 2012 financial results in a press release, including first quarter 2012 earnings per share ("EPS") of $0.27. Align's first quarter 2012 reported EPS beat Wall Street analyst estimates by $0.06 per share. The press release stated:

**Align Technology Announces First Quarter Fiscal Year 2012 Results**

- Q1 net revenues of $135.1 million increased 4.8% sequentially and 28.8% year-over-year

- Q1 Invisalign clear aligner revenue of $123.3 million increased 3.7% sequentially and 17.6% year-over-year with Invisalign case shipments of 85.3 thousand

- Q1 scanner and CAD/CAM services revenue of $11.8 million increased 17.8% sequentially

- Q1 GAAP diluted EPS was $0.26 and Q1 Non-GAAP diluted EPS was $0.27

    . . . Align Technology, Inc. today reported financial results for the first quarter of fiscal 2012 ended March 31, 2012.

    Total net revenues for the first quarter of fiscal 2012 (Q1 12) were a $135.1 million. This is compared to $128.9 million reported in the fourth quarter of 2011 (Q4 11) and compared to $104.9 million reported in the first quarter of 2011 (Q1 11). Q1 12 Invisalign clear aligner revenue of $123.3 million increased 3.7% sequentially and 17.6% year-over-year. . . .

    Commenting on Align's first quarter, Thomas M. Prescott, Align president and CEO said, "I'm pleased to report a very strong quarter and a great start to the year. Strong *Invisalign volume, particularly from North American Orthodontists, drove better than expected revenue, margins and EPS, and we achieved a major milestone – our first $100 million quarter in North America sales. In addition, our scanner and CAD/CAM services business was up nicely this quarter.*"

*       *       *

1    Q2 Fiscal 2012 Business Outlook

2            For the second quarter of fiscal 2012 (Q2 12), Align Technology expects net
     revenues to be in a range of $140.2 million to $143.7 million. GAAP earnings per
3    diluted share for Q2 12 is expected to be in a range of $0.25 to $0.27. Non-GAAP
     earnings per diluted share for Q2 12 is expected to be in a range of $0.26 to $0.28. A
4    more comprehensive business outlook is available following the financial tables of
     this release.

5

6    24.    On April 23, 2012, Credit Suisse issued an analyst report entitled "Better Than

7    Expected Case Growth & Margins Drive Significant Beat." The article discussed the first quarter

8    results:

9    **Better Than Expected Case Growth & Margins Drive Significant Beat**

10   •    **Bottom Line – Expect Shares to Trade Higher Off These Results**: ALGN
          reported non-GAAP EPS of $0.27 vs. consensus of $0.21, paced by nearly
11        20% case volume growth. In addition to the better case growth, average
          selling price (ASP) and margins were better than we had expected. We
12        continue to be impressed with the organic volume growth which is spread
          across all of ALGN's products and geographies. Despite the recent run in the
13        shares and relatively lofty valuation, we expect the shares to trade up
          significantly off these results. We are raising our F12, F13 and F14 estimates
14        and our TP to $32 (from $25). . . .

15   •    **2O Guidance Suggests Continued Sequential Momentum**: ALGN's
          revenue, case shipment and non-GAAP EPS guidance of $0.26-$0.28 all
16        point to continued sequential momentum in 2Q. On the call, management
          commented that Invisalign doctors in North America continue to report a
17        steady flow of patients in their offices, suggesting the initial read on 2Q
          remains positive. *We are raising our organic growth for both the clear*
18        *aligner and the scanner businesses in our model to better reflect the recent*
          *organic revenue trends. We would point out that ALGN has been*
19        *establishing a track record of being conservative with its guidance.*

20                              *    *    *

21   •    **Cadent Results Show Nice Sequential Improvements This Quarter**:
          Cadent revenues of roughly $11.8M were up sequentially from $10M in
22        4Q11. Both scanner and CAD/CAM service revenues seemed to surpass
          company expectations given prior guidance which had suggested overall
23        scanner & service revenues would be down sequentially in 1Q12. While the
          European environment seems to remain challenging for scanner sales,
24        stronger service revenues & solid performance from North America appears
          to be offsetting the weakness in Europe.

25   25.    In reaction to the April 23, 2012 announcement of Align's first quarter 2012 financial

26   results, the Company's stock price spiked 14% from a close of $27.44 per share on April 23, 2012 to

27   a close of $31.76 per share on April 24, 2012, on massive trading volume.

28

26.     On May 8, 2012, the Company filed its Form 10-Q for the period ending March 31, 2012.  The Form 10-Q was signed by both Prescott and Arola.  In addition to repeating the first quarter 2012 financial results, the Company made the following representations concerning the goodwill associated with the 2011 acquisition of Cadent, specifically stating that the current value of the goodwill was $135 million:

> Goodwill of $135.8 million primarily represents the excess of the purchase price [of Cadent] over the fair value of the underlying net tangible and identifiable intangible assets, and represents the expected relative synergies of the transaction and the knowledge and experience of the workforce in place.

*     *     *

> ***If our goodwill or amortizable intangible assets become impaired, we may be required to record a significant charge to earnings.***

27.     After the May 8, 2012 filing of the Form 10-Q, the Company's stock price continued to trade above $30.00 per share.

28.     On July 19, 2012, the Company announced its second quarter 2012 financial results in a press release, including revenues of $145.6 million and diluted EPS of $0.34:

**Align Technology Announces Second Quarter Fiscal Year 2012 Results**

- Q2 net revenues of $145.6 million increased 7.8% sequentially and 21.3% year-over-year

- Q2 Invisalign clear aligner revenue of $133.7 million increased 8.4% sequentially and 17.6% year-over-year

- Q2 Invisalign case shipments of 95.3 thousand increased 11.7% sequentially and 25.3% year-over-year

- Q2 scanner and CAD/CAM services revenue of $11.9 million increased 1.8% sequentially

- Q2 diluted EPS was $0.34

    . . . Align Technology, Inc. today reported financial results for the second quarter of fiscal 2012 ended June 30, 2012.

    Total net revenues for the second quarter of fiscal 2012 (Q2 12) were $145.6 million. This is compared to $135.1 million reported in the first quarter of 2012 (Q1 12) and compared to $120.1 million reported in the second quarter of 2011 (Q2 11). Q2 12 Invisalign clear aligner revenue of $133.7 million increased 8.4% sequentially and 17.6% year-over-year. Q2 12 Invisalign clear aligner case shipments of 95.3 thousand increased 11.7% sequentially and 25.3% year-over-year. Q2 12 scanner and CAD/CAM services revenue was $11.9 million, compared to $11.8 million in Q1 12 and compared to $6.4 million in Q2 11. Q2 11 includes two months of scanner and

CAD/CAM services financial results from the acquisition of Cadent Holdings, Inc. which closed on April 29, 2011.

"The second quarter was another great one for Align and I'm pleased to report strong results for revenue, operating margin and EPS – all better than our outlook," said Thomas M. Prescott, Align president and CEO. "During the quarter strong Invisalign volume grew across all products and customer channels reflecting continued increased Invisalign utilization." . . .

Net profit for Q2 12 was $28.5 million, or $0.34 per diluted share. This is compared to net profit of $21.0 million, or $0.26 per diluted share in Q1 12 and net profit of $11.2 million, or $0.14 per diluted share in Q2 11.

\*     \*     \*

Q3 Fiscal 2012 Business Outlook

For the third quarter of fiscal 2012 (Q3 12), Align Technology expects net revenues to be in a range of $136.8 million to $140.8 million. Invisalign clear aligner case shipments for Q3 12 are expected to be in a range of 94.8 to 96.3 thousand cases, which reflect a year-over-year increase of 19.5% to 21.3%. GAAP earnings per diluted share for Q3 12 is expected to be in a range of $0.26 to $0.28. Non-GAAP earnings per diluted share for Q3 12 is expected to be in a range of $0.27 to $0.29. . . .

. . . "Our Q3 12 outlook for Invisalign case shipment growth of 19.5% to 21.3% year-over-year is an important metric pointing to the continued progress and strength of the business."

29.     On July 19, 2012, the Company held a conference call with analysts and investors to discuss the second quarter 2012 financial results.  The conference call was hosted by defendants Prescott and Arola.  In addition to repeating the financial figures reported in the July 19, 2012 press release, defendants stated as follows with respect to the Company's scanner business and third quarter 2012 business outlook:

[PRESCOTT:] Moving on to our scanner and CAD/CAM services segment, Q2 revenue was $11.9 million compared with $11.8 million in Q1 a slight increase from Q1 which reflected strong North American scanner sales offset by lower service revenue in international scanner sales. Our scanner business continues to exceed our expectations in North America. We're getting leverage from the combined efforts of our scanner and Invisalign sales team, especially major Invisalign events including the AAO meeting in May and several customer forums held across the US in Q2 which were primarily for GP dentists.

All-in-all, we're seeing terrific progress in North America, almost good enough to offset some of the performance gap in Europe. While it appears the capital equipment market remains soft in Europe, we're just not satisfied with our execution and results in this area and are working to remedy the situation. . . .

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS                                                      - 8 -

1       With the majority of our New Jersey consolidation completed, we have closed most of the gaps in Scanner customer service, technical support, and delivery
2   that I mentioned last quarter which were felt most acutely by legacy iTero customers.

3                            \*     \*     \*

4   [AROLA:] *As we enter Q3, we continue to see solid patient traffic and activity in our customers' offices. Our North America orthos are busy with new teenage case*
5   *starts, and we expect Q3 to be a strong teen quarter for Invisalign.* For North American GPs, we expect seasonality to be a factor as we are anticipating doctors
6   will have less in-office days due to vacations.

7       . . . As a result, Invisalign case volume is anticipated to be in a range of 94,800 to 96,300 cases which reflects a year-over-year increase of 19.5% to 21.3%.
8   This compares to a year-over-year increase of 25.3% in quarter two, 2012 and 19.8% in quarter three, 2011.

9
10       Our Invisalign shipment volumes are an important metric pointing to the continued progress and strength of the business. For Q3, we expect the Scanner and CAD/CAM Service business to be down sequentially from quarter two, given
11   summer seasonality for capital equipment purchases. . . . We also expect Q3 scanner sales in Europe to be flat.

12
13       With that as a backdrop, we expect Q3 revenues to be in a range of $136.8 to a $140.8 million.

14       30.    After Align reported its financial results on July 19, 2012, its stock price spiked more

15   than 7%, from a close of $31.70 per share on July 19, 2012 to a close of $34.18 per share on July 20,

16   2012.

17       31.    On August 2, 2012, the Company filed its Form 10-Q for the period ending June 30,

18   2012 with the SEC. In addition to repeating the second quarter 2012 financial results reported in the

19   July 19, 2012 press release, the Company made the following specific representations concerning the

20   goodwill associated with the Cadent acquisition:

21       Goodwill of $135.3 million represents the excess of the purchase price over the fair value of the underlying net tangible and identifiable intangible assets, and
22   represents the expected synergies of the transaction and the knowledge and experience of the workforce in place. None of this goodwill will be deductible for tax
23   purposes. Under the applicable accounting guidance, goodwill will not be amortized but will be tested for impairment on an annual basis or more frequently if certain
24   indicators are present. We allocated approximately $77.3 million of the goodwill from the Cadent acquisition to our Scanner and CAD/CAM Services reporting unit
25   and approximately $58.0 million to our Clear Aligner reporting unit. We allocated this goodwill to our reporting units based on the expected relative synergies
26   generated by the acquisition.

27                            \*     \*     \*

28

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS         - 9 -

*If our goodwill or amortizable intangible assets become impaired, we may be required to record a significant charge to earnings.*

Under Generally Accepted Accounting Principles in the United States ("U.S. GAAP"), we review our goodwill and amortizable intangible assets for impairment when events or changes in circumstances indicate the carrying value may not be recoverable.

32.    Defendants' statements during the Class Period alleged herein concerning Align's current financial condition and financial results for fiscal 2012 were each false and misleading, because defendants knew or deliberately disregarded and failed to disclose the following facts:

(a)    the Company's reported income and earnings were materially overstated, as the Company failed to timely write down goodwill associated with the April 2011 Cadent acquisition;

(b)    negotiations with Straumann, the Company's exclusive distributor in Europe, concerning their distribution relationship had failed or been failing and therefore the goodwill associated with the acquisition of Cadent had already been materially impaired; and

(c)    the Company's sales and current sales trends could not support the Company's third quarter and fiscal 2012 financial forecasts.

33.    Nevertheless, between April 26, 2012 and August 31, 2012, Company insiders sold 1,546,445 shares of Align stock at prices as high as $35.83 per share for illegal insider trading proceeds of more than $52 million. More specifically, between April 27, 2012 and August 3, 2012, the Individual Defendants sold 197,893 shares of their Align stock for $6.55 million.

**THE TRUTH BEGINS TO BE DISCLOSED**

34.    On October 17, 2012, the Company issued a press release announcing that the distribution agreement between Align and Straumann would be terminated. Straumann had been the key distribution partner for Cadent products, including iTero intra-oral scanners:

**Align Technology and Straumann to Terminate Distribution Agreements for iTero® Scanners**

. . . Align Technology, Inc. today announced that the Company has reached a mutual agreement with Straumann to terminate their distribution agreements for iTero intra-oral scanners in Europe and North America, effective December 31, 2012. The original exclusive distribution agreement in Europe was signed in December 2009 between Straumann and Cadent Inc., the developer of iTero, which was subsequently acquired by Align in April 2011. A subsequent agreement was

operationalized in February 2011, awarding Straumann non-exclusive distribution rights for iTero intra-oral scanners in North America.

. . . Align and Straumann have worked together over the past few years to build a sales, services, and support model for the iTero scanner to benefit both companies. Despite collective efforts, the two companies have concluded that their current collaboration for distributing iTero scanners does not meet their strategic or financial requirements in the present economic environment.

35.     Also on October 17, 2012, after market hours, the Company issued a press release pre-announcing it third quarter fiscal 2012 financial results. The reported third quarter 2012 financial results missed Wall Street analysts' revenue and earnings expectations. As opposed to reporting forecasted revenue results of up to $140.6 million, the Company reported revenue of $136.5 million. In addition, the Company reported that Cadent scanner and CAD/CAM sales and services revenues had declined nearly 16%, year-over-year. The Company also disclosed that as a result of the termination of the Straumann distribution agreement, it would review goodwill and possibly take a substantial impairment charge erasing a significant amount of the goodwill value of Cadent. Finally, the Company issued a weak revenue and earnings outlook for the fourth quarter of 2012, well short of prior forecasts:

**Align Technology Announces Preliminary Third Quarter Fiscal Year 2012 Results**

\*       \*       \*

- Q3 net revenues of $136.5 million increased 8.4% year-over-year

- Q3 Invisalign clear aligner revenue of $126.7 million increased 10.9% year-over-year

- Q3 Invisalign case shipments of 92.5 thousand increased 16.6% year-over-year

- Q3 Invisalign teenager case shipments of 24.5 thousand increased 21.5% year-over-year

- *Q3 scanner and CAD/CAM services revenue of $9.8 million decreased 15.9% year-over-year*

- *Preliminary Q3 diluted GAAP EPS was $0.29, non-GAAP was $0.28*

- *Company Evaluating Possible Goodwill Impairment Charge*

Align Technology, Inc. today reported preliminary financial results for the third quarter of fiscal 2012 ended September 30, 2012. The preliminary results are

1  subject to change based upon the conclusion of goodwill impairment testing being undertaken by the Company.

2

3  Total net revenues for the third quarter of fiscal 2012 (Q3 12) were $136.5 million. This is compared to $145.6 million reported in the second quarter of 2012 (Q2 12) and compared to $125.9 million reported in the third quarter of 2011 (Q3 11). Q3 12 Invisalign clear aligner revenue was $126.7 million, compared to $133.7 million in Q2 12 and $114.3 million in Q3 11. Q3 12 Invisalign clear aligner case shipments were 92.5 thousand, compared to 95.3 thousand in Q2 12 and 79.4 thousand in Q3 11, and included Align's 2 millionth case milestone. Q3 12 scanner and CAD/CAM services revenue was $9.8 million, compared to $11.9 million in Q2 12 and compared to $11.6 million in Q3 11.

4

5

6

7

8  The discontinuation of Align's distribution relationship with Straumann in Europe and North America, announced in a separate press release today, and the decline in results of operations of the Company's Scanner and CAD/CAM Services reporting unit triggers the risk of impairment of goodwill associated with the acquisition of Cadent. As a result, Align is in the process of conducting step one of a goodwill impairment test as prescribed by GAAP. This test is currently in progress and the Company has not concluded as to whether goodwill, which had a carrying value of $135.3 million as of September 30, 2012, is impaired and for this reason the Company's results are preliminary. Prior to filing its Form 10-Q for the third quarter of 2012, the Company expects to complete the step one impairment test. If the result of the step one analysis indicates an impairment, the Company will conduct a step two evaluation to determine the amount of the non-cash impairment charge, if any. If step two cannot be completed prior to filing of the Form 10-Q for the third quarter, the Company may estimate a range of potential impairment and may record an estimated non-cash charge in the third quarter of 2012 results. Any difference between an estimate and the final step two evaluation, would be recorded in the fourth quarter 2012. *The Company's evaluation could result in a non-cash impairment charge for a substantial portion of the $135.3 million book value of goodwill which would negatively affect net income although revenue and cash flow from operations would not be impacted.*

9

10

11

12

13

14

15

16

17

18  "Despite a strong summer season for Invisalign teenager cases, which increased 21% sequentially and year-over-year, our third quarter revenue was slightly lower than our outlook," said Thomas M. Prescott, Align president and CEO. "Q3 is historically a slower period for North American GP Dentists and International doctors due to summer vacations. *This year summer seasonality was more pronounced in North America and as a result, we did not see the expected ramp in Invisalign cases for GP Dentists and Orthodontists. This softness has continued through October and is reflected in our Q4 guidance . . . ."*

19

20

21

22

\*    \*    \*

23

24  Q4 Fiscal 2012 Business Outlook

25  For the fourth quarter of fiscal 2012 (Q4 12), Align Technology expects net revenues to be in a range of $134.2 million to $137.8 million. Invisalign clear aligner case shipments for Q4 12 are expected to be in a range of 90.0 to 93.0 thousand cases, which reflect a year-over-year increase of 9.0% to 12.6%. GAAP earnings per diluted share for Q4 12 is expected to be in a range of $0.21 to $0.23, excluding any potential impairment charge. Non-GAAP earnings per diluted share for Q4 12 is expected to be in a range of $0.21 to $0.23.

26

27

28

36.     On October 17, 2012, the *Associated Press* issued an article entitled "Align Tech slumps on 3Q estimate and 4Q outlook":

**Align Tech slumps on 3Q estimate and 4Q outlook**

Align Tech falls after weak 3rd-quarter and 4th-quarter outlooks; potential goodwill charge

. . . Align Technology Inc., which makes the Invisalign clear braces system, slumped Wednesday after the company *gave disappointing estimates for its third-quarter results and offered a weak fourth-quarter forecast.*

*The company said its revenue typically slows down in the third quarter because of summer vacations, but this year that slowdown was more pronounced than usual in the North American market.* Align said those conditions have persisted in October and it gave a weak fourth-quarter outlook.

. *The company also said it is terminating a distribution agreement for its iTero intra-oral scanners, and it may have to take a goodwill impairment charge as a result.*

Align Technology shares skidded $7.05, or 20 percent, to $28.36 in aftermarket trading following the announcement. The stock reached an all-time high of $39.82 on Sept. 13.

Align said its preliminary adjusted net income totaled 28 cents per share and revenue grew 8 percent to $136.5 million in the third quarter. That fell short of Wall Street estimates, as FactSet says analysts were expecting net income of 29 cents per share and $140.2 million in revenue on average.

\*        \*        \*

*The company said Straumann Holding of Switzerland will stop distributing the iTero scanners at the end of 2012. Straumann distributes the scanners in Europe and North America under agreements with Cadent Holdings, a company Align bought in March 2011.* Align said the companies decided to end the distribution deal because the arrangement didn't meet their strategic or financial requirements.

Align will continue direct sales of iTero scanners in North America and will market the devices on a more limited basis in Europe. *The company said it may have to write down the value of Cadent as a result of the termination and weaker results from its non-Invisalign business. The current value of that goodwill is $135.3 million.*

37.     On these October 17, 2012 disclosures, Align's stock price plummeted more than 20%, from a close of $35.41 per share on October 17, 2012 to a close of $28.18 per share on October 18, 2012, on massive trading volume of 20 million shares.

1

**LOSS CAUSATION/ECONOMIC LOSS**

2      38.      During the Class Period, as detailed herein, the defendants made false and misleading

3   statements and engaged in a scheme to deceive the market and a course of conduct that artificially

4   inflated the price of Align common stock and operated as a fraud or deceit on Class Period

5   purchasers of Align common stock by misrepresenting the Company's business and prospects.

6   Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the

7   market, the price of Align common stock fell precipitously, as the prior artificial inflation came out

8   of the price over time.  As a result of their purchases of Align common stock during the Class

9   Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the

10  federal securities laws.

11

12

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET DOCTRINE**

13      39.      At all relevant times, the market for Align common stock was an efficient market for

14  the following reasons, among others:

15              (a)      Align common stock met the requirements for listing, and was listed and

16  actively traded on the NASDAQ, a highly efficient and automated market;

17              (b)      as a regulated issuer, Align filed periodic public reports with the SEC and the

18  NASDAQ;

19              (c)      Align regularly communicated with public investors via established market

20  communication mechanisms, including through regular disseminations of press releases on the

21  national circuits of major newswire services and through other wide-ranging public disclosures, such

22  as communications with the financial press and other similar reporting services; and

23              (d)      Align was followed by several securities analysts employed by major

24  brokerage firms who wrote reports which were distributed to the sales force and certain customers of

25  their respective brokerage firms. Each of these reports was publicly available and entered the public

26  marketplace.

27      40.      As a result of the foregoing, the market for Align common stock promptly digested

28  current information regarding Align from all publicly available sources and reflected such

1   information in the price of the stock.  Under these circumstances, all purchasers of Align common

2   stock during the Class Period suffered similar injury through their purchase of Align common stock

3   at artificially inflated prices, and a presumption of reliance applies.

4                               **CLASS ACTION ALLEGATIONS**

5          41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

6   Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common

7   stock of Align during the Class Period, and who were damaged thereby (the "Class").  Excluded

8   from the Class are defendants and their families, the officers and directors of the Company, at all

9   relevant times, members of their immediate families and their legal representatives, heirs, successors

10  or assigns and any entity in which defendants have or had a controlling interest.

11         42.    The members of the Class are so numerous that joinder of all members is

12  impracticable.  Throughout the Class Period, Align common stock was actively traded on the

13  NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can

14  only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or

15  thousands of members in the proposed Class.  Record owners and other members of the Class may

16  be identified from records maintained by Align or its transfer agent and may be notified of the

17  pendency of this action by mail, using the form of notice similar to that customarily used in

18  securities class actions.

19         43.    Plaintiff's claims are typical of the claims of the members of the Class as all members

20  of the Class are similarly affected by defendants' wrongful conduct in violation of federal law

21  complained of herein.

22         44.    Plaintiff will fairly and adequately protect the interests of the members of the Class

23  and has retained counsel competent and experienced in class action and securities litigation.

24         45.    Common questions of law and fact exist as to all members of the Class and

25  predominate over any questions solely affecting individual members of the Class.  Among the

26  questions of law and fact common to the Class are:

27               (a)    whether the federal securities laws were violated by defendants' acts as

28  alleged herein;

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS                              - 15 -

1   (b) whether statements made by defendants to the investing public during the

2 Class Period misrepresented material facts about the business and operations of Align;

3   (c) whether the price of Align common stock was artificially inflated during the

4 Class Period; and

5   (d) to what extent the members of the Class have sustained damages and the

6 proper measure of damages.

7  46. A class action is superior to all other available methods for the fair and efficient

8 adjudication of this controversy since joinder of all members of the Class is impracticable.

9 Furthermore, as the damages suffered by individual Class members may be relatively small, the

10 expense and burden of individual litigation make it impossible for members of the Class to

11 individually redress the wrongs done to them. There will be no difficulty in the management of this

12 action as a class action.

13       **NO SAFE HARBOR**

14  47. The statutory safe harbor provided for forward-looking statements under certain

15 circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

16 Many of the specific statements pleaded herein were not identified as "forward-looking statements"

17 when made.

18        **COUNT I**

19    **Violation of §10(b) of the Exchange Act and Rule 10b-5**
     **Promulgated Thereunder Against All Defendants**

20

21  48. Plaintiff repeats and realleges each and every allegation contained above as if fully set

 forth herein.

22

23  49. During the Class Period, defendants disseminated or approved the materially false

24 and misleading statements specified above, which they knew or deliberately disregarded were

25 misleading in that they contained misrepresentations and failed to disclose material facts necessary

26 in order to make the statements made, in light of the circumstances under which they were made, not

27 misleading. In addition, defendants Prescott and Arola, while in possession of material non-public

28

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS    - 16 -

1    information about the Company's true financial and business conditions, sold millions of dollars

2    worth of Align stock at artificially inflated prices, as set forth above in ¶33.

3         50.     Defendants (a) employed devices, schemes and artifices to defraud, (b) made untrue

4    statements of material fact and/or omitted to state material facts necessary to make the statements

5    made not misleading, and (c) engaged in acts, practices and a course of business that operated as a

6    fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

7         51.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

8    the market, they paid artificially inflated prices for Align common stock. Plaintiff and the Class

9    would not have purchased Align common stock at the prices they paid, or at all, if they had been

10    aware that the market prices had been artificially and falsely inflated by defendants' misleading

11    statements.

12         52.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

13    other members of the Class suffered damages in connection with their purchases of Align common

14    stock during the Class Period.

15                            **COUNT II**

16              **Violation of §20(a) of the Exchange Act**
                     **Against All Defendants**

17

18         53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set

   forth herein.

19

20         54.     The Individual Defendants acted as a controlling persons of Align within the meaning

   of §20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or

21

22    directors of Align, their ownership of Align stock, and their statements made on behalf of the

   Company, the Individual Defendants had the power and authority to cause Align and its officers and

23

24    employees to engage in the wrongful conduct complained of herein. Align controlled the Individual

   Defendants and the Company's other officers and employees. By reason of such conduct,

25

   defendants are liable pursuant to §20(a) of the Exchange Act.

26

27

28

1                               **PRAYER FOR RELIEF**

2         WHEREFORE, plaintiff prays for relief and judgment, as follows:

3         A.       Determining that this action is a proper class action and certifying plaintiff as a Class

4 representative under Rule 23 of the Federal Rules of Civil Procedure;

5         B.       Awarding compensatory damages in favor of plaintiff and the other Class members

6 against all defendants, jointly and severally, for all damages sustained as a result of defendants'

7 wrongdoing, in an amount to be proven at trial, including interest thereon;

8         C.       Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

9 action, including counsel fees and expert fees; and

10         D.       Such other and further relief as the Court may deem just and proper.

11                               **JURY DEMAND**

12         Plaintiff hereby demands a trial by jury.

13 DATED: November 28, 2012           ROBBINS GELLER RUDMAN
                                             & DOWD LLP

14                                  SHAWN A. WILLIAMS

15

16                                  _____

17                                     SHAWN A. WILLIAMS

                                 Post Montgomery Center

18                                  One Montgomery Street, Suite 1800

19                                  San Francisco, CA  94104
                                 Telephone: 415/288-4545

20                                  415/288-4534 (fax)

21                                  ROBBINS GELLER RUDMAN
                                             & DOWD LLP

22                                  DARREN J. ROBBINS
                                 DAVID C. WALTON

23                                  655 West Broadway, Suite 1900
                                 San Diego, CA  92101

24                                  Telephone: 619/231-1058
                                 619/231-7423 (fax)

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VANOVERBEKE MICHAUD &
 TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Align Tech.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEM ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

ALIGN

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21ˢᵗ day of November, 2012.

CITY OF DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEM

By: _____

Its: _____Trustee_____

- 2 -

ALION

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 04/24/2012 | 100 | $31.65 |
| 04/24/2012 | 458 | $31.70 |
| 04/24/2012 | 1,242 | $32.26 |
| 05/10/2012 | 950 | $31.31 |
| 05/11/2012 | 750 | $30.98 |
| 05/15/2012 | 850 | $31.17 |
| 05/18/2012 | 450 | $29.66 |
| 06/06/2012 | 850 | $31.01 |
| 07/20/2012 | 804 | $32.53 |